# HURWITZ STAMPUR & ROTH
## ATTORNEYS AT LAW

MICHAEL HURWITZ  
WILLIAM J. STAMPUR  
JAMES ROTH

299 BROADWAY, SUITE 800  
NEW YORK, N.Y. 10007

(212) 619-4240  
FAX (212) 619-6743

May 27, 2008

**BY ECF**

The Honorable Loretta A. Preska  
U.S. District Judge  
Southern District of New York  
U.S. Courthouse  
500 Pearl Street  
New York, NY 10007

Re: **United States v. Edwin Rodriguez**  
07 CR 563 (LAP)

Dear Judge Preska,

This letter is respectfully submitted on behalf of the defendant Edwin Rodriguez, who is scheduled to appear before Your Honor on June 3, 2008 for sentence.

### OFFENSE CONDUCT

On March 3, 2008 the defendant in accordance with the plea agreement pled guilty to Count One of an information charging a Conspiracy to Distribute 100 grams or more of heroin. Count One carries a mandatory minimum of 5 years.

### PLEA AGREEMENT

The agreement specified a drug quantity of at least one kilogram with a base offense level of 32. The defendant received a deduction of three points for acceptance of responsibility. The Guideline range provided for a total offense level of 29 and a Criminal History of II with a range of 97-121 months. The Probation Department calculated the same guidelines.

The plea agreement allows the defendant to argue for a sentence outside the advisory range pursuant to § 3553(a) factors; it does not allow for a request to depart from the stipulated range.

### PRIOR CRIMINAL HISTORY

The PSR summarizes the defendant's Criminal History, he has 3 Criminal History points which establish a Criminal History Category of II.

MH/RODRIGUEZ, E/SENT.LTR

...

**HURWITZ STAMPUR & ROTH**

Honorable Loretta A. Preska
May 27, 2008
Page 2 of 5

The Court in considering § 3553 factors, and whether a sentence outside the guideline range is appropriate, should scrutinize the defendant's criminal history.

In 1992, the defendant received a conditional discharge for possession of a controlled substance. In 1997, the defendant received two days' community service for possession of a controlled substance. In 2003, the defendant was sentenced to five days for possession of a weapon (a knife). In 2005, the defendant was convicted of possession of a controlled substance and was sentenced to a conditional discharge. All the convictions were for misdemeanors and on each of the cases, except for 1992, the defendant received one Criminal History point.

## GUIDELINES

As the Court is aware, Federal Sentencing Guidelines are not binding but advisory. See United States v. Booker, 125 S.Ct. 738 (2005) (excising the mandatory provisions of the guidelines and corresponding Sentence Reform Act (SRA), principally 18 U.S.C. §3553(b)(1)). There is a duty to consider the guidelines, among all the other factors to be considered that are identified in 18 U.S.C. §3553(a), and then determine whether to impose a "non-guidelines sentence." See United States v. Crosby, 2005 WL 240916 (2 Cir. 2005). Appellate review will be for reasonableness. Id.

> 18 U.S.C. § 3553(a) provides that: The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed;
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for;
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines...;
(5) any pertinent policy statement... [issued by the Sentencing Commission];

HURWITZ STAMPUR & ROTH

Honorable Loretta A. Preska
May 27, 2008
Page 3 of 5

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a). The Guidelines are treated "as just one of a number of sentencing factors." United States v. Ranum, No. 04 Cr. 31, slip op., at 2-4 (E.D. Wis. Jan. 19, 2005) (recognizing that several of the factors identified in subsection 3553(a) conflict with the prescriptions and proscriptions of the Guidelines, and that such conflicts will require resolution by district courts). West, pg. 2.

A sentence outside the range is appropriate since it is sufficient, but not greater than necessary to comply with § 3553 of the guidelines. Factors to consider in granting a downward departure under § 4A1.3 may include "…" the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in [Criminal History Category] VI." United States v. Mishoe, 241 F. 3d. 214, 219 (2d Cir. 2001).

In regards to the guideline of the defendant, 97 months at the low end of the range, the Court is asked to consider the fact that the defendant was sentenced to **5 days** on a misdemeanor charge. **A sentence of 60 months or 1,800 days is 360 times greater than the five day sentence**. The mandatory minimum sentence of 5 years is sufficient but not greater than necessary under Section 3553.

The logic of the Sentencing Commission's policy statement warning of the potential over-representation of criminal history due to such designation, is applicable. The goal of the career offender classification should be to achieve a deterrent effect and to address adequately the concerns regarding recidivism that are reflected in that classification scheme. As the Second Circuit notes in Mishoe,

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. 241 F.3d at 220.

While the Sentencing Commission and the aforementioned cases discuss the appropriateness of departing downward within the Guidelines, such analysis preceded the Supreme Court's decision in Booker. Now, post-Booker, the Guidelines are merely advisory, and a sentencing court must consider the Sentencing Commission's intent as just one of several salient factors, see 18 U.S.C. § 3553(a) (5) (A), in determining whether to impose a Guideline sentence or a non-Guideline sentence and the length of such sentence.

MH/RODRIGUEZ, E/SENT.LTR

HURWITZ STAMPUR & ROTH

Honorable Loretta A. Preska
May 27, 2008
Page 4 of 5

A pair of recent decision clarifies that the Supreme Court meant what it said in *Booker*. *Kimborough v United States*. 128 S.Ct. 558, 76 USLW 4023. *United States v Gall,* 128 S.Ct. 586. A sentence outside the Guidelines is not per se invalid, but rather the Court applies a reasonableness standard. Id. In *Gall,* the Supreme Court held that a Court of Appeals may not require sentences that deviate substantially from the Guidelines range to be justified by "extraordinary circumstances." 128 S.Ct. 586. The Guidelines are but one of the §3553 factors to be considered and do not carry any special weight. "The Guidelines should be the starting point and the initial benchmark." But a judge must make an individualized assessment considering all the statutory factors.

Clearly, the Sentencing Commission intended that the sentencing court carry discretion in determining the appropriateness of categorizing a defendant as a career offender, an intention echoed by the Second Circuit, and expected that the sentencing court would reduce a defendant's range of punishment if the career offender designation were misplaced, or if the range is higher than necessary to achieve a just punishment. Here, the court is not dealing with a career criminal, but a defendant in Criminal History II and a low end range of 97 months and a mandatory minimum of 60 months.

## PERSONAL HISTORY

The defendant was born in Puerto Rico in 1949. He is one of three children, his siblings reside in New York.

His family moved to New York when he was six months old and he was raised on the Lower East Side under poor economic conditions.

His father died of a heart attack in the 1970s. His mother is 86 years old and still resides on the Lower East Side. He has a close relationship with his siblings and his mother. At the time of his arrest, he was living with his mother and she visits him at the MCC.

The defendant has two adult children and was divorced in the 1990s.

## HEALTH

Defendant suffers from diabetes and takes insulin twice per day. He has high blood pressure and varicose veins and ingrown toenails, which can present health issues for persons suffering with diabetes.

MH/RODRIGUEZ, E/SENT.LTR

Honorable Loretta A. Preska
May 27, 2008
Page 5 of 5

## SUBSTANCE ABUSE

Defendant started using heroin in the 1990s and for the past five or six years prior to his arrest, he was using heroin on a daily basis. The defendant has been in about three detox programs. These programs, according to the defendant, were "many years ago."

Mr. Rodriguez states that he never participated in a drug treatment or counseling program but participated in a drug class at the MCC and believes future counseling will be beneficial. He feels he will not use drugs again because he is "too old for these problems."

## EDUCATION

Although, the defendant states he completed 9 years of education, he is not able to read or write. He states he has skills as an automechanic and as a general laborer.

## EMPLOYMENT

Defendant worked for three years until about June 2006 at the New York Post, in the printing press room. He left the job when the plant moved to the Bronx.

The defendant also worked for four or five years in the 1990s as a cook for the Department of Corrections. In the 1980s, he worked for four or five years cleaning as an office cleaner at Beth Israel Medical Center. He also worked in the 1970s to the 1980s in the maintenance department at North Central Bronx Hospital and in the kitchen at Gubener Hospital.

## CONCLUSION

Mr. Rodriguez's previous maximum sentence was 5 days. He now faces a minimum mandatory term of imprisonment of five years. Certainly a sentence of 97 months is greater than necessary to promote respect for the law and to provide just punishment for his offense. A term of imprisonment of five years would achieve the deterrent effect.

Respectfully submitted,

Michael Hurwitz

MH:jy

MH/RODRIGUEZ. E/SENT.LTR